### In the Matter of FASHION MILLS OF FLORIDA, INC., Debtor.

### FASHION MILLS OF FLORIDA, INC., Plaintiff,

### v.

### GEROMES, INC. OF FLORIDA and Michael Gerome, Defendants.

### Bankruptcy No. 82–396.
### Adv. No. 82–363.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 3, 1983.

Don M. Stichter, Tampa, Fla., for plaintiff.

Samuel J. Swisher, Sarasota, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the immediate matters under consideration are (1) a Complaint on Account Receivable filed by Fashion Mills of Florida, Inc. (Debtor) against Geromes, Inc. of Florida (Geromes, Inc.) and Michael Gerome; and (2), a counterclaim for breach of oral contract. The Debtor seeks recovery of $2,925.80, an amount allegedly due and owing as the result of a failure by either Geromes, Inc. or Michael Gerome to pay the balance on a promissory note signed by Michael Gerome in his individual capacity. Geromes, Inc. seeks by way of counterclaim, damages in excess of $5,000 for breach of an oral contract whereby the Debtor allegedly agreed to supply a specific line of floor covering to Geromes, Inc. and to accept a return on items not sold by Geromes, Inc.

This is a civil proceeding related to a case arising under Title 11 and the matters before the Court constitute a "related proceeding," which under the Local Rule is defined as "a civil proceeding that, in the absence of a petition in bankruptcy, could have been brought in state court." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); L.R. (d)(3)(A). Thus, in accordance with Local Rule (d)(3)(B), the parties to the proceeding consented to the entry of a final judgment by the Bankruptcy Judge, thereby eliminating the need to submit findings, conclusions and a proposed judgment to the District Judge. Accordingly, this matter is properly before this Court for resolution.

The Court having received evidence, heard testimony of witnesses and being otherwise duly advised in the premises, finds the following facts:

Late in 1980, the Debtor, a Tampa wholesale carpet distributor, commenced a business relationship with Geromes, Inc., a floor covering and carpet retailer whose principal place of business is in Sarasota, Florida. Due to an expansion of the Sarasota business into a new and larger facility, Michael Gerome and Jerry Goldstein, President of the Debtor met in April 1980 to discuss Geromes need for an increased inventory. As a result, they reached an oral agreement whereby the Debtor was to deliver certain carpets and floor coverings to the warehouse of Geromes, Inc. During the course of the negotiations, Mr. Goldstein and Michael Gerome discussed payment arrangements and Michael Gerome did not object to personally guaranteeing payment for the merchandise. The amount of indebtedness resulting from this transaction totaled $12,025.80.

The record reveals that although financial arrangements were discussed at the April meeting and the inventory was subsequently delivered to Geromes, no papers were signed until May 20, 1981 when Michael Gerome signed a promissory note in the amount of $12,025.80. The Note called for six equal payments of $2,004.30 each to commence on June 20, 1981 and terminate on November 11, 1981. Michael Gerome at no time objected to signing a promissory note in his individual capacity.

Although the payment schedule as prescribed on the face of the note was not followed, it is undisputed that Geromes made continuous monthly payments in varying amounts which were accepted by the Debtor. Apparently concerned about the arrearages, however, Mr. Goldstein met with Michael Gerome in Sarasota in November. On this occasion, Mr. Goldstein agreed to take back four rolls of carpet

which Michael Gerome had been unable to sell. It was further agreed that the Debtor would credit Geromes' account in the amount of $1,800 for the returned carpet and Geromes would tender a payment of $1,000. Although the check was written by Geromes and delivered to the Debtor, the carpet was never retrieved by the Debtor and Geromes' account was not credited.

Despite the Debtor's failure to pick up the carpet and credit Geromes' account, Geromes continued to make payments to the Debtor until March of 1982. Although a March payment in the amount of $400 was mailed to the Debtor, Michael Gerome directed a stop payment upon learning that the Debtor had filed a Chapter 11 Petition.

It is the Debtor's contention that Geromes remains indebted to the Debtor in the amount of $2,925.80 or the total amount remaining on the note. Michael Geromes, on the other hand, contends that as a result of Goldstein's agreement to take back the unsold carpet and credit Geromes account, the true amount owing is $1,125.80.

The Court considered the evidence and finds that the weight of the evidence supports a finding of the existence of a second oral agreement; that is, an agreement by the Debtor to credit Geromes account with $1,800, while retrieving the unsold carpet. Consequently, the true indebtedness, upon return of the carpet now held in Geromes' warehouse, is $1,125.80.

In addition, there was no evidence presented at trial to support or dispute the counterclaims filed by Geromes, Inc. and, therefore, the counterclaim must be dismissed.

A separate final judgment will be entered in accordance with the foregoing.